IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ABRAM SEWELL, et al.,           *

              Plaintiffs

                      *

   v.

                      *     CIVIL NO. SKG-12-00044

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, LOCAL NO. 333    *
et. al.,

              Defendants    *

 

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

    Now pending before this Court are motions brought by
defendants International Longshoremen's Association, Local No.
333 ("Local 333"), Steamship Trade Association of Baltimore,
Inc. ("STA"), Ports America Chesapeake, LLC, ("Ports America"),
and Marine Terminal Corporation East ("MTC"). Defendants move to
dismiss the claims against them, or in the alternative, move for
summary judgment.  For the reasons set forth below, the Court
dismisses Counts II and IV against STA and the employer
defendants and Count VI against all defendants, as prematurely
brought, as these issues are currently under consideration in
internal remedy proceedings as a result of Mr. Ronald Barkhorn's
grievances.  Also, for the reasons set forth below, the Court

1

grants summary judgment to the defendant Local Rule 333 on Counts I and III, because plaintiffs' allegations that Local 333 failed to represent them adequately in negotiating and overseeing the CBA are time-barred and that plaintiffs' allegations that Local 333 failed to discharge its duty of fair representation to its members in the Vaughan arbitration are without merit.

## I.   Standard of Review

### A. Summary Judgment

Summary judgment under Fed. R. Civ. P. 56 is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Material" facts are those that might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).  When considering a motion for summary judgment, the court views all facts and makes all reasonable inferences in the light most favorable to the non-

moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

**B. Motion to Dismiss**

In evaluating a motion to dismiss, a court "must accept all well-pled facts as true, and construe these facts in the light most favorable to the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## II.  Background

Plaintiffs assert that this Court has subject matter jurisdiction over the matter under 28 U.S.C. § 1331 for their claims under section 301 of the Labor Management Relations Act ("LMRA") and their claims under 42 U.S.C. § 1981 and supplemental jurisdiction over their contract claims under 28 U.S.C. § 1367.

Named plaintiffs are Abram Sewell, Brian Warch, and Samuel Thames.  Plaintiffs seek to represent as a class all persons employed by Defendant STA who are members of the bargaining unit represented by Local 333 and who are assigned to the Longshore Class.  (ECF No. 6, 13).  Defendants are Local 333, STA, Ports America, and MTC.  STA is a multi-employer association representing employers in the Port of Baltimore.  STA represents both Ports America and MTC and is a signatory to the Collective Bargaining Agreement with Local 333.  (ECF No. 6, ¶ 16).  Ports America and MTC are employers in the Port of Baltimore.

Plaintiffs' complaint centers on two distinct employment practices.  First, plaintiffs challenge the "category system" of hiring used by employer defendants in hiring casual labor.  They allege that this system discriminates against and disadvantages workers assigned to the Longshore Class by, inter alia, "denying them the opportunity to bid on jobs in other categories, even when they are qualified for such jobs."  (ECF No. 6, ¶ 68).  Second, plaintiffs challenge employer defendants' practice of moving gangs down in the gang hiring rotation when "any member of a gang is injured and/or files a workers compensation claim." (ECF No. 6, ¶ 39).

More specifically, Counts I and II of plaintiffs' complaint target the category hiring system.  Count I alleges that Local 333 breached its duty by failing to accept, process, and

properly pursue grievances related to the category hiring system.  (ECF No. 6, ¶¶ 67-76).  Count II is brought against STA and defendant employers, and alleges that the category hiring system amounts to an express breach of Collective Bargaining Agreement ("CBA").  (Id. at ¶¶ 77-83).

Counts III and Count IV target the alleged practice of penalizing gangs when an individual is injured.  Count III alleges that that Local 333 breached its duty of fair representation by refusing to advocate for class members against the policy of penalizing gangs when individual members were hurt or filed compensation claims.  (Id. at ¶¶ 83-89).  Count IV, brought against STA and defendant employers, alleges that this practice is a breach of the CBA.  (Id. at ¶¶ 90-94).

Finally, Count VI, brought against all defendants, alleges a violation of the Harvey Decree—a 1971 order prohibiting discrimination against African American workers—and directing the implementation of a non-discriminatory seniority.  (ECF No. 6, ¶¶ 102-107).[1]

**A. The Category Hiring System**

All members of the plaintiff class and subclass are assigned to the Longshore Class. The Longshore Class is comprised of gang workers, terminal longshoreman, and unattached

---

[1] Count V was a discrimination claim brought under 42 U.S.C. §1981 that was dropped in the course of briefing.

longshoreman.  (ECF No. 6, ¶ 22).  Approximately 50% of the members of Local 333 who work in the port are assigned to the Longshore Class.  (Id.).  The majority of bargaining unit members assigned to the Longshore Class are African American, constituting approximately 64% of the workforce as of December 2010.  (Id.).  Longshore Class workers are either assigned to work in specific gangs, or are dispatched from the STA Central Dispatch Center as unattached Longshore Class workers to fill in gangs as needed.

When a **permanently** assigned position at a port company becomes available, **port-wide seniority** is used to dictate which individual receives the position.  (ECF No. 24-1, 5).  The Local 333 Agreement specifies that the permanent position will go to "the employee who is highest on the Master List provided he is qualified to fill the position."  (Id.).  When a permanent longshoreman position becomes available, therefore, the most senior qualified longshoreman port-wide will be assigned.

When a company has work opportunities, however, **company seniority** generally dictates which of its permanently assigned employees—including gangs, longshoreman, foremen, mechanics, gearmen and drivers—is assigned the work.  (ECF No. 24-1, 6). For example, when drivers are needed for ro-ro vessel operations, the employer must hire drivers from its roster in order of company seniority.  (Id.)  As to gang work, employers

6

must hire from their roster of permanently employed gangs, but the Local 333 agreement allows for competition among those gangs: under the CBA, employers may select gangs "in accordance with productivity, reliability, qualifications, and Article IX.1 herein." (ECF No. 24-1, 6).

None of the above practices are challenged in the instant case.  At issue here is employer defendants' method of hiring casual labor.  (ECF No. 49, 21-22).  Casual labor (distinct from permanent positions) is hired through the Dispatch Center.  (ECF No. 24-1, 6).  This hiring is done by category. Union members may be slotted into one of many categories, including gang carrier, topman (crane operator), longshoreman, tractor driver, mechanic, and foreman. (Id.)  All Local 333 employees are initially slotted as longshoreman.  (Id.) Once they are assigned to a company permanent roster in a specialized category, they are thereafter assigned to that category.  (Id.).

All casual longshore positions in the dispatch center are offered first to longshore categorized personnel.  (Hartman Aff. ECF No. 24-3, ¶ 4).  Defendants argue, and plaintiffs do not directly dispute, that only after the longshore category is depleted can members of another category (i.e. a driver or mechanic) take a longshoreman casual job.[2] (Id.) The only

---

[2] Plaintiffs do note that there "appear to be issues of disputed fact . . . between allegations of the Complaint regarding the category system and the statements of Mr. Hartman," upon whom defendants rely for the above

exception to this rule is crane operators, who are considered longshoreman; crane operators may take jobs in the longshoreman category once all crane operator positions are filled.[3] (ECF No. 24-1, 7).

Plaintiffs allege that the category system of hiring results in discrimination against Longshore Class members and African Americans in violation of the express terms of the CBA. (ECF No. 6, ¶ 68).  They allege that the system disallows Longshore Class members from bidding on or training for higher paying, more desirable jobs in a different category.  (ECF No. 6, ¶ 30).  In contrast, they contend that workers in other categories may use their port-wide seniority to "bump" longshore class workers from casual employment.  (Id.).  Plaintiffs further allege that as a result of the category system they have not been given adequate notice of available jobs within the Longshore Class. (ECF No. 6, ¶ 10).

**B. The Gang Hiring System**

As noted _supra_, when work becomes available employers _must_ hire from their roster of permanently employed gangs.  The Local 333 agreement allows for competition among those gangs, however:

description of the category system.  (ECF No. 49, 23).  Plaintiffs do not specify which facts are disputed.  Such a conclusory assertion does not satisfy plaintiffs' obligation under Rule 56.

[3] Defendants claim that this exception is in place to ensure adequate work for unassigned crane operators, who otherwise struggle to find work opportunities. (ECF No. 24-1, 7).

the CBA allows employers to select gangs "in accordance with productivity, reliability, qualifications, and Article IX.1 herein." (ECF No. 24-1, 6). STA uses gang productivity, adjusted by safety considerations, and to a small extent by reliability and qualifications, to determine the rankings of each gang they employ. (Vaughn Arb., ECF No. 23-3, 34). The highest ranked gang is first in line for work opportunities, the second highest is next in line, and so forth.

At issue here is the alleged practice of penalizing entire gangs by pushing them back in line when a single member is injured while at work. (ECF No. 6, ¶ 85). Plaintiffs acknowledge that this practice has already been considered by Arbitrator Vaughn in an arbitration brought by Local 333 following a grievance by Mr. Ronald Barkhorn. (Vaughn Arb., ECF No. 23-3, 2). Arbitrator Vaughn found that the practice is consistent with the collective bargaining agreement because it does not indiscriminately penalize gangs who suffer injury, but rather only penalizes gangs when they are at fault in incidents that lead to injuries or safety violations. (Id. at 35). Plaintiffs maintain, however, that this practice discriminates against and penalizes all members of the gang as well as Longshore Class fill-in workers. (ECF No. 6, ¶ 85). Specifically, plaintiffs allege in Count III and IV of their

complaint that the practice violates the collective bargaining agreement as well as the ILA Constitution.  (Id. at ¶ 86).

### III. **Analysis**

#### A. **Hybrid § 301 Actions**

The present action is brought under Section 301 of the Labor Management Relations Act, 29 U.S.C § 185 ("LMRA").  LMRA was enacted to create a practical method of suing unions for violations of collective bargaining agreements.  17 A.L.R.2d 614.  The statute contemplates breach of contract suits between labor organizations, employers, and individual employees.  Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976).  In Counts II and IV of their complaint, plaintiffs invoke LMRA to challenge the category hiring and gang ordering practices which they allege are in violation of the CBA.

LMRA is an option of last resort for parties aggrieved under a collective bargaining agreement.  The statute allows parties to bring a case in federal court "only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play."  Id. Courts are cautioned not to "usurp those functions which collective-bargaining contracts have properly entrusted to the arbitration tribunal."  Id.  As such, a union "must be given the

opportunity to act on behalf of its member before he may proceed on his own." Amburgey v. Consolidation Coal Co., 923 F.2d 27, 29 (4th Cir. 1991).

When a plaintiff has not fully exhausted the grievance and arbitration process, including situations in which relevant grievances are pending arbitration, her claim is not properly in federal court. Bennefield v. Hoechst Celanese Corp., No. 99-2460 2000 U.S. App. LEXIS 23834 (4th Cir. 2000). Even if a final arbitration decision has been made, a plaintiff must also exhaust any available internal procedures which could "reactivate the grievance or award complete relief." Fed. Lab. Law: NLRB Prac. § 14:9.; Clayton v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., 451 U.S. 679, 692 (1981). The disposition of an employee's grievance "becomes final at whatever stage of the grievance procedure the union and employer resolve the grievance or terminate further consideration of it." McNaughton v. Dillingham Corp., 707 F.2d 1042, 1046 (9th Cir. 1983).

An employer may not insist on exhaustion of administrative remedies, however, when plaintiff demonstrates that their union has breached its duty of fair representation. Hines 424 U.S. at 567; Vaca v. Sipes, 386 U.S. 171, 186 (1967). In such situations, plaintiffs may claim that pursuit of internal remedies is futile due to the union's breach. Id.; Fed. Lab.

Law: NLRB Prac. § 14:9 ([W]here a contractual procedure is "tainted by the Union's breach of its duty of fair representation, an employee's independent action against the employer under Section 301 . . . is not barred by the otherwise exclusive contractual remedy.").

These suits are known as "hybrid" 301 claims, and include both a contractual claim against an employer and a fair representation[4] claim against the union.  United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 66 (1981).  These hybrid claims are "inextricably interdependent."  Id.; Nemsky v. ConocoPhillips Co., 574 F.3d 859, 864 (7th Cir. 2009).  If plaintiffs cannot demonstrate that the union has breached its duty of fair representation, plaintiffs are foreclosed from enforcing their contractual rights in federal court.  Bruce v. Local 333, Int'l Longshoremen's Ass'n, 189 F. Supp. 2d 282, 290 (D. Md. 2002); Nemsky, 574 F.3d at 864.

A claim for breach of the duty of fair representation can, however, survive independent of a contractual claim under LMRA.

---

[4] The duty of fair representation is a "federal obligation which has been judicially fashioned from national labor statutes."  1-12 Labor And Employment Arbitration § 12.02.; Abrams v. Carrier Corp., 434 F.2d 1234 (2d Cir. 1970).  A breach of a union's statutory duty of fair representation occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith."  Vaca v. Sipes, 386 U.S. 171, 190 (1967); Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 890 (4th Cir. 1980).  A union must be "grossly deficient" in its representation or act in reckless disregard for a member's rights in order to sustain a claim for breach of the duty of fair representation. Wyatt, 623 F.2d at 891; Amburgey, 923 F.2d at 29.

Thus, while the contractual claim in a hybrid 301 action must be supported by a successful duty of fair representation claim, the converse is not true.  Plaintiffs that withdraw or do not succeed on a contractual claim can "potentially still state a claim against the Local for breach of the duty of fair representation that is not dependent on a breach of the collective bargaining agreement." Jones v. Union Carbide Chem. & Plastics Co., No. 94-11451995 U.S. App. LEXIS 27273 *16 (4th Cir 1995); see also Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 83 (1989)("Federal courts have jurisdiction to hear fair representation suits whether or not they are accompanied by claims against employers."); Berg v. USW, Local 3733, No. 98-308 1998 U.S. Dist. LEXIS 4518 (E.D. Pa. Apr. 8, 1998).  Jurisdiction for such independent claims is not founded on section 301 of LMRA, but on 28 U.S.C. § 1337(a) as a cause of action "arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." Id.; 28 U.S.C. § 1337(a).  An independent fair representation claim is valid even when the complaint fails to plead the specific jurisdictional provision, so long as the facts state a claim thereunder. Jones, 1995 U.S. App. LEXIS 27273 at *16; Berg, 1998 U.S. Dist. LEXIS 4518 at *7-8.

In the instant complaint, plaintiffs claim that: (1) employer defendants' system of category hiring, training,

assignment and promotion "breaches the express terms and
provisions of the CBA," (ECF No. 6, ¶ 80), and (2) that employer
defendants' practice of penalizing an entire gang when a single
member is injured breaches the terms of the CBA. (ECF No. 6, ¶
93). They further claim that Local 333's "failure to accept and
process multiple timely filed grievances regarding the outdated
category system of hiring, training, assignment and promotion,"
and gang hiring procedures, in addition to its "cavalier
handling of grievances," represents a breach of the duty of fair
representation. As such, the instant action is a "hybrid" 301
action, alleging both a breach of contract and breach of the
duty of fair representation and is brought under § 301 of the
LMRA. (ECF No. 6, ¶ 75).

### B. Contractual Claims

As a threshold matter, defendants argue that plaintiffs
have not exhausted the administrative remedies available, and
therefore cannot bring their contractual claims in this Court.
(ECF No. 24-1, 14). The Local 333 agreement provides for a
grievance and arbitration process for member complaints. (ECF
No. 55, 6). Defendants contend that the union is currently
pursuing this process for two grievances filed by Mr. Ronald
Barkhorn in January and February 2012 which cover all of the
allegations in Counts I and III. (ECF No. 55, 6).

Mr. Barkhorn's January 23, 2012 grievance is targeted at category based hiring, training, and certification systems, and discrimination against the Longshore Class generally.[5]  (ECF No. 24-1, Ex. 1, 5-6).  The grievance contends that the procedures have a disparate impact on age, disability, and gender in hiring, and are violative of the Harvey Decree and the union constitution.  (Id.).  Mr. Barkhorn's February 2, 2012 grievance attacks the practice of gang ordering that "denies employment on the basis of injuries, filing worker's comp. and individual incidents"  (ECF No. 24-1, Ex. 1, 1-4).  This grievance similarly contends that the practice violates both the CBA and the union's constitution.  (Id.).

The Local 333 grievance process has three stages.  First, grievances are taken before the Trade Practice Committee, where Local 333 and management have an equal number of voting representatives.  (ECF No. 24-1, 11).  If there is a deadlock at this stage, the grievance goes before a Committee of Six, which is similarly comprised.  (Id.).  If the Committee of Six cannot come to a majority decision, the grievance may be submitted for arbitration by either the union or STA.  (Id.).  Defendants claim that on May 1, 2012, there was a tie vote at the Trade

---

[5] Review of  documentation relating to Mr. Barkhorn's grievances is appropriate on a motion to dismiss, as these grievances are central to plaintiffs' claim and are referred to extensively in their complaint.  Parker v. Hurley, 514 F.3d 87, 91 (1st Cir. 2008).

Practice Committee on both of these grievances, and they were submitted to the Committee of Six.  (ECF No. 24-1, 12).

In response, plaintiffs acknowledge that they were unaware Local 333 was pursuing these grievances when they brought the instant complaint.  (ECF No. 45, 15).  They do not dispute the fact that these grievances cover the same facts alleged in their complaint, or that they are currently being processed.  (Id.). They "concede that if the Union responsibly and in good faith processes the two Barkhorn grievances as submitted, that it will have met its duty of fair representation."  (ECF No. 45, 15). Plaintiffs therefore ask that the Court "stay consideration of the duty of fair representation claim with regard to the failure of the Union to process Mr. Barkhorn's grievances pending the outcome of the union's handling of those grievances."  (ECF No. 45, 15).

Plaintiffs have not exhausted the remedies provided for in the CBA. In both Count I and III of their complaint they allege that Local 333 has failed to grieve members' complaints regarding category hiring and the practice of penalizing gangs when individual gang members are injured.  It is now clear, however, that Local 333 has not definitively terminated further consideration of these issues.  McNaughton, 707 F.2d at 1046. Indeed, plaintiffs acknowledge that two grievances concerning these exact issues are currently being processed.  The Court may

not adjudicate contractual claims against Local 333 prior to the completion of this process: the union "must be given the opportunity to act on behalf of its member before he may proceed on his own." Amburgey, 923 F.2d at 29. With grievances relating to these issues still pending, these claims are not properly in federal court. Bennefield 2000 U.S. App. LEXIS 23834 at *2 (Plaintiffs claim not properly in federal court when three grievances are pending arbitration.). Accordingly, the Court dismisses Counts II and IV.

### C. Duty of Fair Representation Claims

As explained supra, a duty of fair representation claim is viable independent of a breach of contract claim against an employer. While plaintiffs' complaint has not alleged an independent cause of action under 28 U.S.C. § 1337(a) for breach of the duty of fair representation, the facts alleged state a plausible claim thereunder. Berg 1998 U.S. Dist. LEXIS 4518 at *8 (finding claim actionable where "it is clear from the face of the Complaint that the Court does have jurisdiction over plaintiff's remaining claim under 28 U.S.C. § 1337").

In the course of briefing, Defendant Local 333 asked that the Court treat its Motion to Dismiss as a Motion for Summary Judgment. (ECF No. 54, 4). As the parties have submitted various exhibits and affidavits in the course of briefing, most

notably the decision of Arbitrator Vaughn (ECF No. 23-3), this issue is more appropriately considered under Rule 54. Accordingly, the Court must determine whether summary judgment is appropriate for these claims.

Plaintiffs have alleged two distinct fair representations claims in Counts I and III of their complaint. (ECF No. 6). First, they argue that Local 333 failed to adequately represent them in collective bargaining. (ECF No. 47, 15) Second, they argue that Local 333 failed to adequately represent them at the Vaughn arbitration. (Id. at 17-18). The essential facts of these claims are undisputed. The Court will analyze each of these claims in turn.

### 1. Failure to Adequately Represent Union-Members at the Bargaining Table

Plaintiffs allege that the union has breached its duty of fair representation by failing to "diligently seek resolution at the bargaining table" in relation to both category hiring and gang ordering practices. (ECF No. 6, ¶ 75). Specifically, plaintiffs allege that Local 333 breached the duty of fair representation through (1) "agreeing to a provision in the collective bargaining unit that allows employers to penalize an entire gang of longshoreman when a single person is injured," (ECF no. 47, 15), and (2) "acquiescing to a policy which

disadvantages a large class of longshoreman and results in disparate impact on African-American workers."  (Id.).

A union's duty of fair representation extends to its conduct during the negotiation or administration of a collective bargaining agreement.  Dement v. Richmond, F. & P. R. Co., 845 F.2d 451, 457 (4th Cir. 1988); Acri v. International Asso. of Machinists & Aerospace Workers, 781 F.2d 1393 (9th Cir. 1986). Specifically, a union must fairly represent all of its members in negotiating the terms of any collective bargaining agreement. Id.  If a union's conduct in negotiating an agreement is "arbitrary, discriminatory or in bad faith" they have not met their duty of fair representation.  Dement, 845 F.2d at 457.

While not referencing this specific claim in briefing, defendants claim, inter alia, that Counts I-IV of plaintiffs' complaint should be dismissed as untimely.  (ECF No. 55, 3-4). Defendants correctly argue that the applicable statute of limitations for a hybrid § 301 action is six months, as dictated by section 10(b) of the National Labor Relations act.  Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 172 (1983).  A cause of action accrues when plaintiff "knows or should have known through an exercise of reasonable diligence of the acts constituting the alleged violation." Wise v. Dallas & Mavis Forwarding Co., 753 F. Supp. 601, 605

(W.D.N.C. 1991); <u>see</u> <u>also</u> <u>Gilfillan v. Celanese Ag</u>, 24 Fed.

Appx. 165, 167 (4th Cir. 2001).

   The statute of limitations may be extended, however, if

plaintiff can demonstrate that the complained-of act is a

continuing violation.  <u>International Longshoremen's Ass'n, S.S.</u>

<u>Clerks Local 1624 v. Virginia Int'l Terminals</u>, No. 95-2288 1996

U.S. App. LEXIS 8407 (4th Cir 1996).  The Supreme Court has

found that:

> where occurrences within the six-month limitations
> period in and of themselves may constitute, as a
> substantive matter, unfair labor practices . . .
> earlier events may be utilized to shed light on the
> true character of matters occurring within the
> limitations period.  <u>International Ass'n of Machinists</u>
> <u>v. NLRB</u>, 362 U.S. 411, 416 (1960)

In determining if the continuing violation theory should apply,

the Fourth Circuit looks to whether the "operative facts"

underlying the cause of action occurred within the six-month

period. <u>Virginia Int'l Terminals</u>, 1996 U.S. App. LEXIS 8407 at

*10.  If the acts at the "heart of the . . . complaint" lie

outside the six-month limitations period, the action is barred.

<u>Id.</u>  For example, if plaintiffs "chief quarrel" is with a board

decision regarding a policy affecting time keepers' hours and

wages, and the decision was issued more than 6 months before the

complaint, the action is time-barred, despite the continuation

of the complained-of policy. <u>Id.</u> at *12.

As an initial matter, the Court must determine whether the six month limitations period established in Del Costello for hybrid 301 actions also applies to independent fair representation claims brought under 28 U.S.C. § 1337(a).  Other courts analyzing this question have concluded that if the independent claim is entirely internal to the union, the Del Costello limitations period will not apply.  Brenner v. United Brotherhood of Carpenters & Joiners, 927 F.2d 1283, 1295 (3d Cir. 1991)("The interest in the rapid resolution of labor disputes does not outweigh the union member's interest in vindicating his rights when, as here, a dispute is entirely internal to the Union.")(emphasis added).  If the claim involves union conduct "vis-vis" the employer more akin to a §301 action, however, the Del Costello limitations period applies. Berg, 1998 U.S. Dist. LEXIS 4518 at 10-14.  In Berg, plaintiff voluntarily dismissed all claims against their employer.  Id.  Because the allegations against the union involved its conduct during negotiations with the employer, however, the court found that the six month Del Costello limitations period applies to the remaining fair representation claim. Id.; see also Edwards v. International Union, United Plant Guard Workers of America, 46 F.3d 1047, 1052 (10th Cir. 1995)(finding six month limitations applies where plaintiffs suit against their union was directly linked to an underlying claim against their employer).  Here, as

in Berg, the claim involves union conduct vis-à-vis the employer. Accordingly, the six month Del Costello limitations period applies.

Defendants note that plaintiffs' complaint alleges that category hiring and gang ranking practices have been in place since at least 1996.  (ECF No. 55, 4).  The contested language in the CBA regarding an employer's discretion to assign work to gangs "on the basis of numerical calculations of productivity . . . qualifications, safety and reliability" has also been in place since at least 1996, well outside the limitations period. (ECF No. 55-1, 2).  Plaintiffs do not dispute that these practices began outside of the limitations period.  They argue instead that they represent continuing violations. (ECF No. 47, 19).

The operative fact at the heart of this particular allegation is Local 333's agreement "to a provision in the collective bargaining unit that allows employers to penalize an entire gang of longshoreman when a single person is injured." (ECF No. 47, 15).  This negotiation took place when the above quoted language entered the CBA.  As the clause has been in the CBA for at least 17 years, plaintiffs challenge is over a decade late. As to category hiring, plaintiffs have alleged no specific failure of collective bargaining within the limitations period. Again, the heart of this allegation is the union's acquiescence

to a practice that has been in place for over a decade.
Accordingly, plaintiffs' allegations that Local 333 failed to
adequately represent them in negotiating or overseeing the CBA
are time-barred.

### 2. The Vaughn Arbitration

In addition to the grievances currently being processed,
Local 333 has already pursued to arbitration a grievance
regarding the practice of gang ordering. (ECF No. 24-1, 8). In
the arbitration, Arbitrator Vaughn considered the union's
arguments that the practice of ordering gangs based on injuries
to individual members was discriminatory and otherwise unlawful.
(Id.). He found that the practice was in accord with the CBA
and not discriminatory or otherwise unlawful.  (Id.).

While plaintiffs do not dispute that Local 333 brought to
arbitration a grievance regarding gang ordering practices, they
allege the union breached its duty of fair representation by
failing to adequately represent members in the arbitration.
(ECF No. 45, 14).  Specifically, they claim that the union
failed to bring a seniority grievance to arbitration, (ECF No.
6, ¶ 45), and also failed to introduce sufficient evidence in
the course of arbitration. (ECF No. 45, 14).  More specifically,
they argue that the union failed to submit evidence that "most
injuries for which gangs are penalized have not involved

culpability on the part of a gang member." (Id.).  In so arguing, plaintiffs do not seek review of the arbitration award, but contend that Local 333's conduct during the arbitration was in violation of its duty of fair representation. (Id.).

In response, Local 333 notes that Arbitrator Vaughn found that the grievant—Mr. Barkhorn—did not ground his grievance in seniority.  STA and employer defendants, arguing on Local 333's behalf, further note that Mr. Barkhorn's first grievance was filed in October 2008, several months after the inception of the challenged gang ordering practice. (ECF No. 55, 7-8).  They argue that this grievance, and any further grievances on the issue, was outside of the ninety day limitations period for such complaints established by the CBA. (Id.).  As such, STA and employer defendants argue that "the contract provides substantial basis for denying Mr. Barkhorn's grievance concerning seniority." (Id. at 9).  Finally, STA and employer defendants justify Local 333's decision not to bring these grievances to arbitration by claiming that "plain and unambiguous language" of the Local 333 Agreement makes no mention of seniority as related to gang hiring, and instead clearly describes a process of hiring by productivity, reliability, and qualifications.[6]  (Id.).

---

[6]Defendants also note that Mr. Barkhorn, and not the named plaintiffs, filed both the grievances that were allegedly ignored and the one that entered arbitration. (ECF No. 23-1, 10).  They argue that at least one of the named

A union is granted exclusive authority to represent its members in dealings with an employer.  Martin H. Malin, The Supreme Court and the Duty of Fair Representation, 27 HARV. C.R.-C.L. L. REV. 127 (1992).  The union is accorded a "wide range of reasonableness" in exercising this right.  Hines, 424 U.S. at 563-564 (internal citations and quotations omitted). Recognizing the potential for abuse, however, the Supreme Court has mandated that a union's right to represent employees carries with it a duty to do so fairly and in good faith.  Malin, supra, at 127; Vaca v. Sipes, 386 U.S. 171, 177 (1967).  As such, during the course of representation a union is "subject always to complete good faith and honesty of purpose in the exercise of discretion."  Hines, 424 U.S. at 564.  If the union acts outside of these constraints, a member may bring a claim for breach of the duty of fair representation.

The most common duty of fair representation claim attacks a union's handling of grievances alleging breaches of the collective bargaining employment by an employer.  Malin, supra, at 127.  In considering such cases, the Supreme Court has found that a union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion."  Vaca v. Sipes, 386

---

plaintiffs must have filed a grievance in order to exhaust internal remedies. (Id.).  The Court has found for independent reasons that internal remedies have not been exhausted.  The Court notes, however, that union members have standing to bring fair representation claims even when they were not a party to the arbitration which is challenged.  See Martin v. Youngstown Sheet & Tube Co., 911 F.2d 1239, 1244 (7th Cir. 1990).

U.S. 171, 191 (1967); see also, International Brotherhood of Electrical Workers v. Foust, 442 U.S. 42, 51 (1979).  If a union's failure to pursue a grievance was arbitrary, discriminatory, or in bad faith, the union is in breach of its duty of fair representation.  Id.

A union-member does not, however, have "an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." Vaca, 386 U.S. at 191.  As such, a union may opt to screen frivolous or clearly deficient claims rather than take each to arbitration.  Id.  Ultimately, whether a union has exercised acceptable discretion or breached its duty of fair representation depends on the facts of the individual case. Griffin v. International Union, United Auto., Aerospace & Agricultural Implement Workers, 469 F.2d 181, 182 (4th Cir. 1972).  It is clear, however, that "a plaintiff alleging a breach of the duty of fair representation faces a heavy burden in seeking to establish that a union's actions were arbitrary, discriminatory, or conducted in bad faith."  Shufford v. Truck Drivers Local Union No. 355, 954 F. Supp. 1080, 1087 (D. Md. 1996).  Liability for a breach of the duty of fair representation is imposed "only if the Union's actions were wholly unreasonable."  Id.

Local 333 is correct in noting that Arbitrator Vaughn found that Mr. Barkhorn's grievance was unrelated to seniority.  The arbitration opinion noted that it was "undisputed that the grievance, as filed, related to a charge of discrimination/retaliation by the Employer against the Singer gang." (ECF No. 23-3, 31).  Arbitrator Vaughn concluded that neither Mr. Barkhorn nor the union initially proposed seniority as a basis for their challenge to the gang hiring system. (Id.).  The union only raised this argument—seemingly independently—later in the arbitration process.  As a result, Arbitrator Vaughn found that the seniority issue was untimely raised and did not consider it.  (Id.).

Under these undisputed facts, Local 333 has not breached its duty of fair representation.  First, and most important, Arbitrator Vaughn clearly found that Mr. Barkhorn did not bring a grievance grounded on seniority.  As such, there is no basis for plaintiffs' argument that the union "disregarded the contractual seniority issue raised in the underlying grievances . . . and therefore waived the opportunity to raise the issue with the Arbitrator." (ECF No. 47, 14).  As is clear from the arbitration decision, the seniority issue was not raised in the underlying grievances considered at the Vaughn arbitration. (ECF No. 23-3, 31).  There is therefore little support for plaintiff's position that the union was wholly unreasonable in

27

not pursuing seniority earlier.  The union was under no

obligation to pursue seniority at the Vaughn arbitration because

it had not been raised in the underlying grievances.

Even assuming, however, that Mr. Barkhorn did grieve the

seniority issue, Local 333 was under no strict obligation to

pursue this grievance to arbitration.  Indeed, the relevant

facts that plaintiffs rely upon suggest that a seniority-based

grievance had little chance of success.  As STA and employer

defendants note, any seniority issue raised by Mr. Barkhorn was

likely time-barred.  (ECF No. 55, 9).  In addition, there is

little support for Mr. Barkhorn's seniority argument in the

language of the collective bargaining agreement.  (Id. at 9-10).

The Local 333 agreement creates a "Seniority Board" to

address all complaints involving seniority.  (ECF No. 55-2, 2).

The board has the authority to "determine whether any rules . .

. have been broken, and shall have the power to correct any

violation.  (Id.).  The CBA mandates that the "Board shall not

hear or act on any complaint filed later than ninety (90) days

from the date of inception of the alleged violation."  (Id.).

Arbitrator Vaughn has held that this 90-day time limit for

seniority complaints applies to seniority-related grievances

submitted to arbitration.  (ECF No. 55-3, 6).  "[T]o hold

otherwise," Arbitrator Vaughn noted, "would be to blatantly

28

disregard the Agreement's time limits for submitting complaints to the Seniority Board." (Id.).

The record indicates, and the parties do not dispute, that the publication of gang statistics, and the practice of ordering the gangs by productivity, qualifications, safety and reliability, has been in place since at least May 2008. (ECF No. 24-5, 11). STA and employer defendants argue that the practice, but not publication of data, has been in place since at least 2004. (Id.; ECF No. 55, 8).

Plaintiffs acknowledge in briefing that Mr. Barkhorn's first grievance that arguably related to category hiring and seniority was filed on October 29, 2008. (ECF No. 47, 13; ECF No. 47-1, 1-2). Even assuming that gang ordering by productivity and safety did not begin until May of 2008, the seniority aspect of this grievance was still two months past the applicable statute of limitations. The Court therefore agrees with defendants that "the contract provides a substantial basis for denying Mr. Barkhorn's grievance concerning seniority." (ECF No. 55, 8). Plaintiffs' already face a high bar in their duty of fair representation claim; the likely untimeliness of Mr. Barkhorn's seniority grievance makes their claim all the more tenuous.

Moreover, the evidence suggests that Mr. Barkhorn's grievance lacked substantial merit and was therefore properly

"screened" by Local 333.  The collective bargaining agreement
states that "[e]ach employer will put forth its best effort to
provide work to all gangs on its permanent roster." (ECF No.
55-2, 7).  It goes on to note: "[w]ork assignments to gangs will
not be made solely on the basis of numerical calculations of
productivity, but also according to qualifications, safety and
reliability."  (Id.).

     The system of gang ranking challenged on seniority grounds
by Mr. Barkhorn is based upon this language.  As defendants
note, there is no mention of seniority in the agreement; the
language clearly states that ranking is done on productivity,
qualifications, safety, and reliability.  (ECF No. 55-2, 7).
The CBA gives the union the opportunity to challenge gang
rankings on the basis of an employer's assessment of these
factors, not on the basis of seniority.  (Id.).  Under the terms
of the CBA, seniority is irrelevant to gang ordering.  As such,
Mr. Barkhorn's seniority argument lacked substantial merit.
Based on these undisputed facts, the union did not breach its
duty of fair representation by failing to timely pursue the
seniority issue.  A union may "tailor its effort to match the
merit of the claim."  Cunningham v. Owens-Illinois, Inc., 669 F.
Supp. 757, 761 (S.D. W. Va. 1987).  Given limited resources, "it
must give priority to those claims it believes meritorious."
Id.  The union here gave priority to the issues on which Mr.

Barkhorn's grievances were grounded.  Less priority was given to the seniority issue.  This decision was not arbitrary, discriminatory or in bad faith.  Plaintiffs' argument that Local 333 breached its duty of fair representation by failing to present sufficient evidence in the course of arbitration similarly fails.  Plaintiff has not provided the Court with any facts suggesting that the union's failure in this regard was "grossly deficient or in reckless disregard of the member's rights."  Ash v. United Parcel Service, Inc., 800 F.2d 409, 411 (4th Cir. 1986).  At best, plaintiffs allege a "general lack of preparation and effort," which is insufficient for a duty of fair representation claim.  Hardee v. North Carolina Allstate Services, Inc., 537 F.2d 1255, 1258 (4th Cir. 1976).  Accordingly, the Court finds that Local 333 did not breach its duty of fair representation and grants summary judgment in its favor as to Counts I and III.

### D. Count VI: Contempt of Court in Violating the Harvey Decree

The grievances submitted by Mr. Barkhorn currently under consideration by the union both allege a violation of the Harvey Decree.  As these allegations are currently being considered via internal remedies, the Court dismisses this Count without prejudice.

It does nonetheless appear that the allegations do not state a violation of the Harvey Decree.  The Harvey Decree was directed toward two formerly segregated ILA locals that merged to become Local 333 approximately forty years ago.  The decree stated that "following approval of a fair and objective seniority plan by union members, the new local should seek its implementation by means of collective bargaining with the STA and by inclusion of such a plan in the collective bargaining agreement."  United States v. International Longshoremen's Ass'n, 319 F. Supp. 737, 746 (D. Md. 1970).  The decree was to be implemented through collective bargaining and the seniority section of the CBA.  The seniority plan section of the CBA is the current expression of the Harvey Decree.  Plaintiffs have not stated any facts suggesting that this system of seniority is any way racially discriminatory.  Indeed, they have dropped their race discrimination claim in Count V.  As such, it is difficult to foresee a successful or indeed plausible claim in this case under the Harvey Decree.


Date:  3/27/13                          /s/
                              Susan K. Gauvey
                              United States Magistrate Judge